UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**O'NEIL ANTHONY KERR,**

    Plaintiff,

v.                                       Case No. 2:22-cv-148-SPC-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

---

### REPORT AND RECOMMENDATION

Plaintiff O'Neil Anthony Kerr seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 14),[1] and the parties filed a joint memorandum (Doc. 16). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.   Eligibility for Disability Benefits and the Administration's Decision**

    **A.   Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

B.   **Factual and procedural history**

On January 23, 2020, Kerr applied for disability insurance benefits. (Tr. 113, 115, 136). He asserted an onset date of November 3, 2017, alleging disability due to the following: Upper extremity parenthesis, C5-C6 spinal disc herniation with spinal cord compression, cervical spinal stenosis, cervical radiculopathy, degenerative disc disease C4-C5, lumbar strain, thoracic myofascial strain, sacroiliac joint dysfunction of the right side, major depressive disorder/post-traumatic stress disorder,

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 404.1511.

hypertension, neck and back issues, and anxiety. (Tr. 96-97, 114-15, 282). As of the alleged onset date, Kerr was 42 years old with a college education. (Tr. 96, 114, 283). Kerr previously worked as a police detective and account executive. (Tr. 111, 132-33, 283).

On behalf of the administration, a state agency[5] reviewed and denied Kerr's applications initially on August 17, 2020, and upon reconsideration on December 1, 2020. (Tr. 96-113, 114-136). At Kerr's request, Administrative Law Judge (ALJ) Mario G. Silva held a hearing on May 11, 2021. (Tr. 41-95). On May 24, 2021, the ALJ issued an unfavorable decision finding Kerr not disabled. (Tr. 15-35). Kerr's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Kerr then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion

4

throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Kerr had not engaged in substantial gainful activity since November 3, 2017, the alleged onset date. (Tr. 18). At step two, the ALJ characterized Kerr's severe impairments as: cervical degenerative disc disease status post laminectomy/fusion, neuropathy, radiculopathy of upper extremities, obesity, depression, anxiety, and post-traumatic stress disorder. (Tr. 18). At step three, the ALJ determined Kerr did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 18).

> As a predicate to step four, the ALJ arrived at the following RFC:
>
> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours and sit for about six hours for a combined total of about eight hours per day with normal breaks; never climb ladders, or scaffolds; occasionally climb ramps or stairs; occasional balancing, stooping, kneeling, crouching, or crawling; frequent reaching overhead, forward, or to the side; frequent pushing or pulling; frequent handling or fingering; limited to work

5

> that can be performed on even terrain and on non-slippery surfaces; no exposure to wetness and/or humidity as defined by the SCO; no exposure to unprotected heights as defined by the SCO; the individual is able to understand, remember, and carry out simple instructions or tasks; the individual is able to make judgments on simple work-related decisions in such work environment; the individual is able to respond and adapt to routine work situations and to occasional changes in a work setting without special supervision, but with simple instructions or tasks; can interact appropriately with others in a work environment throughout a standard workday without distracting them or exhibiting behavioral extremes, so long as there is no more than brief and superficial interaction with the public, no more than occasional interaction with supervisors and coworkers, but can interact sufficiently to receive daily task assignments and respond to brief status updates; is limited to a job in which the general educational development (GED) reasoning level does not exceed 2; the individual is able to maintain concentration, persistence, and pace for two hour blocks, but requires a job that provides for a break normally offered to all employees of 10-15 minutes and a standard meal break of about 30 minutes; the individual must be able to work at a flexible pace, flexible pace is defined as a work environment that is free of fast-paced production work and that is free of fixed timed hourly units during the work shift, but the employer can set end of workday productivity goals.

(Tr. 21). Consequently, the ALJ found Kerr unable to perform any past relevant work. (Tr. 33). At step five, the ALJ found Kerr could perform other work that exists in significant numbers in the national economy. (Tr. 34). In support, a vocational expert testified that an individual with Kerr's age, education, work experience, and RFC can perform the following representative occupations:

- *Office Helper,* DOT #239.567-010, light; SVP 2, with 14,000 positions in the national economy;

- *Photocopy Machine Operator,* DOT #207.685-014 light, SVP 2, with 10,000 positions in the national economy; and

- *Housekeeping Cleaner,* DOT #323.687-014, light, SVP 2, with 221,000 positions in the national economy.

(Tr. 34).[6]

Thus, for the purposes of the Act, the ALJ concluded Kerr was not disabled from November 3, 2017, the alleged onset date, through May 24, 2021, the date of the decision. (Tr. 35).

**II.    Analysis**

This issue on appeal is whether substantial evidence supports the ALJ's evaluation of the opinion evidence when he found a questionnaire from Dr. David Koehn unpersuasive.

**A.    Standard of review**

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B.     The ALJ properly assessed the opinion evidence

Kerr contends the ALJ erred when evaluating the opinion of Dr. David Koehn. (Doc. 16 at 12-21). Kerr treated with Dr. Koehn briefly in 2018 for a psychological examination and a few follow-ups. (Tr. 700-12, 733-37, 748-49). He did not return to Dr. Koehn again until March 2021—after Kerr's claim was denied by the state

8

agency—for two additional visits. (Tr. 759-62). On April 11, 2021, Dr. Koehn prepared a "Questionnaire as to Mental Residual Functional Capacity" that was submitted to the ALJ. (Tr. 753-56). The questionnaire totals four pages and is largely a "check-box" form in which Dr. Koehn would rate the impairment level of Kerr's ability to engage in certain employment-related functions. The impairment levels were rated as: Extreme, Marked, Moderate, Mild, or None.[7] In the questionnaire, Dr. Koehn found "extreme" impairment in Kerr's ability to:

- work in coordination with or in proximity to others without distracting them,
- relate to general public and maintain socially appropriate behavior.
- perform and complete work tasks in a normal workday or week without being distracted by them,
- carry through instructions and complete tasks independently,
- perform at production levels expected by most employers,
- adapt to changes in a work setting,
- respond appropriately to changes in a work setting,
- behave predictably, reliably and in an emotionally stable manner,
- maintain personal appearances and hygiene, and
- tolerate customary work pressures.

He found a "marked" impairment in Kerr's ability to:

---

[7] Contrary to the applicable regulatory regime, "Extreme" is defined in the questionnaire as "unable to function in this area over 50% of the work day or work week." "Marked" is the same but with a range from 26% to 50% of the workday or workweek; "Moderate" is 11% to 25%; "Mild" is less than 10%; and "None" equates to no limitations. (Tr. 753). When assessing the functional impacts of mental-health impairments, ALJs rate any limitations using the same five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. § 404.1520a(c)(4). But the regulations ascribe entirely different meanings to these terms. An "extreme" limitation in a particular domain means the claimant cannot function in that area independently, appropriately, effectively, and on a sustained basis. "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something less than serious but more than slight. 20 C.F.R. Pt. 404, Subpt. P, App.1, Pt. A, 12.00, F.2.

- accept instruction from or respond appropriately to criticism from supervisors or superiors,
- work in cooperation with or in proximity to others without being distracted by them,
- remember locations and workday procedures and instructions, and
- maintain attention and concentration for more than brief periods of time.

He found a "moderate" impairment in Kerr's ability to be aware of normal hazards and take necessary precautions; and to process subjective information accurately and to use appropriate judgment. He found a "mild" impairment in Kerr's ability to respond appropriately to co-works or peers.

Dr. Koehn expected these impairments would last a year or more, and that Kerr's condition would likely deteriorate if placed under the stress of a job. (Tr. 753-56). Based on these limitations, Kerr argues he is unable to work, so the ALJ should have found him disabled under SSR 85-15. (Doc. 16 at 19-21).

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. § 404.1520c. No longer is an ALJ to afford specific evidentiary weight to certain sources' opinions, such as treating physicians. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the

10

medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors. *Id.* at § 404.1520c(b)(2).

The ALJ found Dr. Koehn's questionnaire unpersuasive. (Tr. 31). The ALJ explained:

> The record does not reflect the claimant receiving regular treatment from Dr. Koehn since the alleged onset date. In his April 2021 assessment, Dr. Koehn noted the claimant had only recently started therapy again. Dr. Koehn does not reference specific treatment notes or examination findings to support his suggested limitations. Moreover, these proposed limitations are widely inconsistent with numerous assessments throughout the record that have shown the claimant to have good judgment, normal memory, and to be alert and oriented. Additionally, his opinion that the claimant's condition would deteriorate if placed under stress is speculative. The extreme limitations suggested by Dr. Koehn are also inconsistent with the claimant's treatment history, which does not reflect any psychiatric hospitalizations or inpatient mental health treatment during the relevant period.

(Tr. 31 (internal citations omitted)). Kerr takes issue with several of these grounds.

Kerr first argues that the ALJ erroneously concluded Dr. Koehn's questionnaire failed to cite supporting treatment notes or examination findings. (Doc. 16 at 14-16). As noted, the questionnaire totals four pages and is largely a "check-box" form. It provides no analysis or evaluation to support the opinions therein. Nevertheless, Kerr thinks it should have been viewed in conjunction with Dr. Koehn's earlier treatment notes. This context, he argues, provides the medical support for Dr. Koehn's findings. Not quite.

11

It is true that when analyzing a "check-box" questionnaire, like the one here, "the doctors' earlier reports should be considered as the bases for their statements." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019). Dr. Koehn's treatment notes identify several impairments and self-reported symptoms from which Kerr suffers, such as difficulty with daily tasks, self-isolation, social withdrawal, minimal eating, depression, feelings of hopelessness, forgetfulness, and moderate major depressive disorder (to name a few). (Tr. 702-08; Doc. 16 at 15-16 (summarizing Dr. Koehn's findings)). But simply identifying a litany of impairments is not enough. *See Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work[.]" (internal citations omitted)); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient."). The physician must justify how their diagnoses affect the claimant's functioning. *See Wimberly v. Kijakazi*, No. 8:20-cv-902-TGW, 2021 WL 4191385, *3 (M.D. Fla. Sept. 15, 2021) (finding ALJ did not err in discounting questionnaire consisting of "mostly marked boxes" as conclusory when the physician never justified how the two diagnosed impairments caused the alleged limitations); *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 596 (6th Cir. 2005) (the physician must translate how abnormal clinical findings affect functioning).

Dr. Koehn never explains—in his questionnaire or other treatment notes—how he concluded Kerr's impairments translate into the opined limitations. This alone provides a basis for discounting his opinion. *See* 20 C.F.R. § 404.1520c(c)(1) (the more supporting *explanations* presented by a medical source to support his opinions, the more persuasive it will be); *see also Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 653-54 (11th Cir. 2011) (treating physician's findings were not supported by objective evidence where treatment notes merely provided a diagnosis or documented the claimant's subjective complaints); *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (noting the ALJ provided good cause to reject the treating physician's opinions stated in forms that did not reference his treatment records or adequately explain his opinions); *Ritorto v. Saul*, No. 8:19-cv-2668-T-TGW, 2020 WL 7074538, *3 (M.D. Fla. Dec. 3, 2020) (noting that the treating physician did not "provide a meaningful explanation for his opinion of extreme limitations which is, in itself, a recognized basis for discounting a treating physician's opinions."); *Hamrick v. Kijakazi*, No. 8:20-cv-2606-TPB-TGW, 2022 WL 4136605, *10 (M.D. Fla. Aug. 4, 2022) ("the conclusory check-box format of Dr. Ransom's opinions is, in itself, a recognized basis for discounting the assessment"); *Anderson v. Colvin*, No. 8:14-cv-256-T-TGW, 2015 WL 1347414, *3 (M.D. Fla. Mar. 24, 2015) ("Notably, the conclusory nature of the Questionnaire is, in itself, a recognized basis for discounting a treating physician's opinion.").

Kerr also disagrees with the ALJ's assertion that Dr. Koehn's questionnaire is inconsistent with examinations from other treatment providers. (Doc. 16 at 16). He claims the ALJ "cherry-picks" a handful of "unremarkable findings" by other providers to support this conclusion. (*Id.*) But the ALJ summarized Kerr's treatment notes in extensive detail over several pages of his decision. (Tr. 22-30). These extensive summaries repeatedly show unremarkable findings, including Kerr having good judgment (Tr. 640, 669, 673, 676), normal memory (Tr. 628, 640, 669, 676), and being alert and oriented (Tr. 559, 565, 577-82, 628, 640, 669, 676). (Tr. 22-30). The ALJ also observed that the extreme limitations opined by Dr. Koehn are unsupported by Kerr's treatment history given there is no record of psychiatric hospitalizations or inpatient-mental-health treatment during the relevant period. (Tr. 31). And whereas Kerr initially refused to take medication, he showed improvement once he did and after attending only a few therapy sessions. (Tr. 618-19, 620, 623-25). The fact Kerr identifies other evidence in the record to support Dr. Koehn's evaluation does not render the ALJ's decision unsupported by substantial evidence. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). And the court "'may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]'" *Dyer v.*

14

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004)).

The ALJ discounted as speculative Dr. Koehn's opinion that Kerr's condition would deteriorate if placed under stress. (Tr. 31). Kerr feels this conclusion is improper because the ALJ failed to explain how he reached this conclusion, which resulted in him "playing doctor" by substituting his own interpretation of the findings for that of Dr. Koehn, a medical expert. (Doc. 16 at 19). But an ALJ is not required to explain why he found a physician's statement speculative when it appears speculative on its face. *Randle v. Colvin*, No. 3:15-cv-894-J-JBT, 2016 WL 7437143, *2 (M.D. Fla. Jan. 22, 2016) ("The Court sees no reason for requiring the ALJ to explain why he thought the statement was speculative, when it reasonably appears speculative on its face."). Dr. Koehn opined that Kerr's condition is "likely" to deteriorate. (Tr. 756). Courts have found similar language to be facially speculative. *See, e.g.*, *Randle*, 2016 WL 7437143, at *2 (finding the ALJ did not err in finding treating physician's opinion speculative when he used language such as "probably" and "may cause"); *Twilley v. Berryhill*, No. 5:16-cv-1163-TMP, 2017 WL 4304988, *4 (N.D. Ala. Sept. 28, 2017) (affirming ALJ's finding that a physician's "would be expected" language was speculative). And Dr. Koehn never attempted to quantify the level of possible deterioration, indicate when such

15

deterioration would likely occur, or specify whether it would be prohibitive. *See Randle*, 2016 WL 7437143, at *2.

Furthermore, the assessment of a claimant's RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. § 404.1546(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). So an ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."). Besides, other record evidence seems to support the ALJ's finding given Kerr reported improvement with medication and therapy and had only recently returned to therapy at the time of Dr. Koehn's 2021 assessment. Thus, remand for further explanation appears unnecessary. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (stating courts should decline "to remand for express findings when doing so would be a wasteful corrective exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision") (internal quotation marks omitted).

The cases Kerr relies upon to further this point are inapposite. In *Sneed v. Comm'r of Soc. Sec.*, the court observed that an ALJ cannot substitute his own opinion for that of multiple medical experts without providing a valid reason. No. 6:13-cv-1453-Orl-TBS, 2015 WL 1268257, *6 (M.D. Fla. Mar. 19, 2015) ("An ALJ who rejects three physicians' and one treating chiropractor's interpretations of technical medical evidence without (at least) providing a good reason for doing so commits error."). But the ALJ articulated multiple reasons for disregarding Dr. Koehn's opinion. And *Freeman v. Schweiker* observes that an ALJ cannot disregard a claimant's alleged pain merely because it was not visible at the hearing. 681 F.2d 727, 731 (11th Cir. 1982). This is simply not applicable here.

Ultimately, the ALJ's detailed consideration of Kerr's treatment notes, medical records, and the other record evidence show why he found Dr. Koehn's questionnaire unpersuasive. He explained that Dr. Koehn's evaluation is not supported by his own records and that Dr. Koehn's opinion is inconsistent with other evidence in the record, which includes frequent "unremarkable" evaluations. This is sufficient. *See* 20 C.F.R. § 404.1520c(b)(2); *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record[.]"). Any failure to explicitly use the words "supportability" and "consistency" in talismanic

fashion in this analysis was harmless. *See Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.").

### III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to enter judgment in Defendant's favor.

Respectfully recommended on January 17, 2023.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**